IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Lianaco, LLC, a Delaware limited liability company,<br><br>Plaintiff<br><br>v.<br><br>Euro Alliance and HK Inno.N,<br><br>Defendants. | CASE NO. |

**COMPLAINT**

The Plaintiff, **Lianaco, LLC** (“**Lianaco**”), brings this action for breach of contract and fraud against Defendants**, Euro Alliance** (“**Defendant EA**”), and **HK Inno.N** (“**Defendant HK**”)(each a “Defendant” and collectively the “Defendants”), and alleges as follows:

**NATURE OF THE CASE**

1. This action is a result of a breach of contract between Supply Line International Medical, LLC, a Michigan limited liability company (“SLI”) and Euro Alliance and HK Inno.N. (**Exhibit “1”** – Agreement).

2. The case was assigned to the Plaintiff, LLC pursuant to a Settlement Agreement. (**Exhibit “2”** – Settlement Agreement)

**PARTIES**

3. Supply Line International Medical, LLC, d/b/a SLI Medical is a medical supply company located at 42350 Grand River Ave, Novi, Michigan 48375.

4. Euro Alliance is a medical supply company with a business address of The Meydan Hotel 1, Business Centre, Meydan, Dubai, U.A.E.

5. HK Inno.N is a medical manufacturing company located at 239, Osongsaengmyeong 2-ro, Osong-eup, Heungdeok-gu, Cheongju-si, Chungcheongbuk-do, Republic of Korea.

6. Lianaco, LLC is a Delaware limited liability company who has been assigned the rights to SLI Medical's claim against Euro Alliance and HK Inno.N. (Exhibit "2")

**JURISDICTION, VENUE, AND PROCEDURAL MATTERS**

7. On information and belief, Defendants EA and HK have offered for sale and sold products in the city of Novi, county of Oakland, State of Michigan.

8. On information and belief, Defendants EA and HK derive revenue from providing selling products in the healthcare space.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this the Counts below, occurred within this District.

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states and a citizen or subject of a foreign state. Specifically, SLI is a limited liability company of the State of Michigan, USA, Lianaco, LLC is a Delaware limited liability company, Defendant EA is a company based in Switzerland and the United Arab Emirates , and Defendant HK is company in the Republic of Korea.

**BACKGROUND**

11. In October 2024, as a result of two hurricanes that brought substantial damage to the southeastern parts of the United States including parts of Florida and North Carolina, the United States supply chain for IV fluid within the United States was damaged.

12. SLI has been in the medical supply distribution business since 2013. SLI sells or facilitates for sale medical supplies, pharmaceuticals, durable medical equipment and other durable

goods to hospital systems, physician offices and practices, ambulatory surgical centers, urgent cares and other medical practitioners and facilities in need of SLI's products and services.

13. Due to the hurricanes in October 2024, SLI's client base and the rest of the United States had a need to replace current supply of IV fluid with a substitute.

14. In October 2024, SLI was connected with Dubai-based Euro Alliance. Euro Alliance is an investment and medical technology commercialization specialist company based in Switzerland and Dubai, UAE.

15. Defendant EA told SLI that it had a relationship with HK. Inno N. HK was founded in 1984 in the Republic of Korea. Defendant HK's business interests are in the areas of prescription drugs, active pharmaceutical ingredients, health supplements and health beauty products.

At that time, Defendant HK told Defendant EA that Defendant HK had a surplus of IV Fluid, and that it was willing to sell it to Defendant EA for SLI.

16. However, prior to acquiring the Product through Defendant EA, SLI needed the Product(s) approved by the United States Federal Drug Administration ("FDA") for importation and use in the US market.

17. After reaching out to the FDA, SLI received temporary approval for the Product in November 2025 until May 25, 2025, with the agreement to continue discussions to approve the Product permanently in the United States. The FDA's approval was based upon the representations made by Defendants EA and HK regarding both the Product itself and Defendant HK's manufacturing facility in Korea.

18. The specific product approved was:

> HK Inno-N 0.9% Normal Saline (0.9% Sodium Chloride) Injection, 1000 mL, Korean Ministry for Food and Drug Safety ("KFDA") Approval Number 80, (U.S. FDA NDC Package Code 84988-1440-1) as further described in and conforming to attached Exhibit A (U.S. FDA Authorization for Import)

19. The FDA reserved the right after approval to perform a site inspection to ensure that the representations made by Defendants EA and HK were accurate.

20. With FDA approval, SLI and Defendant EA entered into a Purchase Order dated November 27, 2024 (“PO”) for the Product that HK agreed and acknowledged to be bound by. (Exhibit “1”).

21. The PO included a dispute resolution provision. Prior to filing this action SLI initiated an arbitration with the American Arbitration Association which both Defendants EA and HK refused to participate in the arbitration with AAA waiving any right to object to this complaint pursuant to the Section 12 of the PO.

22. Further, the U.S. FDA Authorization for Import referenced in the Terms and Conditions, provides, among other things, that the Goods must be “manufactured in compliance with US FDA CGMP’s” [Current Good Manufacturing Practices], with reference to 21 CFR 210/211.

23. Starting on or about December 15, 2024, SLI Medical received possession of Lots NS624H8 and NS624H9 of the Goods (as described in the PO’s Terms and Conditions).

24. Because of the nature of the Goods, SLI could not then reasonably confirm the conformity of the Goods to the contract, other than those aspects of the Goods which were then subject to visual inspection.

25. In particular, at the time of tender of delivery SLI Medical could not reasonably have ascertained whether the Goods were manufactured in conformity with US FDA CGMP’s, and so it relied upon Defendants EA’s and HK’s representations/assurances that the Goods conformed to the contract.

26. In late December or early January 2025, SLI was informed by Defendants EA and/or HK that the FDA was performing an inspection.

27. The inspection of HK’s facility was performed January 16, 2025 through January 24, 2025.

28. Following the inspection, SLI repeatedly asked Defendant EA how the inspection went, and whether the FDA provided a report to HK at that time. Every time, SLI was told that

the inspection went great, and that HK received no written report from the FDA nor did the FDA relay any concerns to HK.

29. Following the inspection, Defendants EA and/or HK hid the results of the FDA inspection for more than two (2) months, and continued to attempt to require SLI to import additional Product pursuant to the PO.

30. In February, the FDA reached out to SLI and informed them that they were preempted from importing any additional Product at this time. The FDA did not initially provide any other details on why.

31. Thereafter, SLI again went back to Defendant EA asking if any problems occurred at the inspection, and again, SLI was told that the inspection was great, and that the FDA had no concerns and did not leave any type of report.

32. Finally, on or about March 31, 2025, the FDA provided SLI with evidence that the Goods, including Lots NS624H8 and NS624H9 ,were *not* manufactured in conformity with US FDA CGMP's – and that this evidence had previously been provided to HK Inno. (**Exhibit "3"**; FDA Form-483 Regarding January 2025 Inspection of Manufacturer's Facility).

33. The FDA also cancelled the temporary approval it had provided to SLI for the Product preventing the importation and/or sale of the Product even though their temporary approval date had not even expired yet.

34. Consequently, the Goods tendered to SLI do not conform to the Contract. Further, because of its nature, that nonconformity and resulting material breach substantially impairs the value of the whole contract and cannot be cured.

35. Specifically, the FDA inspection determined that:

> [The] [f]acility is considered to be in an unacceptable state of compliance with regards to current good manufacturing practice (CGMP). This facility may be subject to CGMP regulatory, or enforcement based upon on this inspection, and FDA may withhold approval of any pending applications or supplements in which the facility is listed. (Exhibit "3")

36. Numerous problematic and concerning observations were noted by the FDA during its Inspection, including:

> OBSERVATION 1 – Procedures designed to prevent microbiological contamination of drug products purporting to be sterile do not include adequate validation of the sterilization process.
>
> OBSERVATION 2 – Aseptic processing areas are deficient regarding the system for monitoring environmental conditions.
>
> OBSERVATION 3 – Written specifications for laboratory controls do not include a description of the testing procedures used. Specifically, Your microbial limits testing procedure is inadequate for recovery.
>
> OBSERVATION 4 – Procedures designed to prevent microbiological contamination of drug products purporting to be sterile are not established, written and followed.
>
> OBSERVATION 5 – Written records of investigations into unexplained discrepancies do not always include the conclusions and follow-up.
>
> OBSERVATION 6 – The quality control unit lacks authority to fully investigate errors that have occurred.
>
> OBSERVATION 7 – Verification of the suitability of the testing methods is deficient in that they do not include all testing requirements.
>
> OBSERVATION 8 – Each component is not tested for conformity with all appropriate written specifications for purity, strength, and control.
>
> OBSERVATION 9 – Employees are not given training in the particular operations they perform as part of their function.
>
> OBSERVATION 10 – The quality control unit lacks responsibility to approve all procedures or specifications impacting on the identity, strength, quality, purity of drug products.
>
> OBSERVATION 11 – Labeling and packaging materials are not representatively samples before use in packaging and labeling of a drug product. (Exhibit “3”)

37. Defendants EA and/or HK had hidden the results of the FDA inspection for more than two (2) months, and continued to attempt to require SLI to import additional product pursuant to the PO.

38. Therefore, based upon the above-described material breaches by EA and HK, pursuant to MCL 440.2608(2) SLI revoked acceptance of Lots NS624H8 and NS624H9 of the Goods and pursuant to MCL 440.2711 canceled the Contract for breach by Defendants EA and HK.

**COUNT I**
Breach of Contract

39. Plaintiff re-alleges and incorporates by reference the allegations of the above paragraphs.

40. On or about November 27, 2024, SLI and Defendants, Euro Alliance ("Defendant EA") and HK Inno.N ("Defendant HK"), entered into a Purchase Order ("PO") for the sale of HK Inno-N 0.9% Normal Saline (0.9% Sodium Chloride) Injection, 1000 mL, which was required to comply with all U.S. Food and Drug Administration ("FDA") testing and certification requirements.

41. Pursuant to the PO, Defendants EA and HK were obligated to ensure that the products sold to SLI conformed with FDA standards, including Current Good Manufacturing Practices ("CGMP").

42. Defendants provided documentation to SLI representing that the products, as well as the manufacturing facilities, met all FDA regulations and standards necessary for importation and use in the United States.

43. Relying on these representations, SLI obtained temporary FDA approval for the importation of the products, conditional on ongoing compliance with FDA standards.

44. Subsequent FDA inspections revealed significant nonconformities in the manufacturing processes of the products, indicating that the products did not adhere to the representations made by Defendants EA and HK.

45. These deficiencies included, but were not limited to, failures in validation of sterilization processes, monitoring of environmental conditions, and adherence to written specifications for laboratory controls, as detailed in the FDA's report.

46. The nonconformities identified by the FDA constitute a breach of the PO as they materially affect the quality and safety of the products, thereby failing to meet the contractually mandated standards.

47. As a result of Defendants' breach, SLI has suffered damages, including financial losses, disruption of business operations, and reputational harm.

WHEREFORE, Plaintiff SLI respectfully requests that this Honorable Court enter judgment in its favor and against Defendants EA and HK, awarding damages of at least $817,564.93, plus reasonable attorney fees and costs, and any other relief the Court deems just and equitable.

**COUNT II**
**Breach of MCL 440.2608(2)**

48. SLI re-alleges and incorporates by reference the allegations of the above paragraphs.

49. Pursuant to MCL 440.2608(2), a buyer may revoke acceptance of a lot or commercial unit whose nonconformity substantially impairs its value if the acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

50. SLI accepted the Goods from Defendants EA and HK under the belief, based on Defendants' representations, that the Goods complied with all necessary FDA regulations and standards, including those pertaining to CGMP requirements.

51. After the FDA inspection revealed numerous deficiencies in the manufacturing processes and nonconformity with CGMP standards, it became evident that the Goods did not meet the requirements of the Purchase Order and the representations made by Defendants.

52. The nonconformity of the Goods substantially impaired their value due to their failure to meet FDA standards, thereby justifying SLI's revocation of acceptance under MCL 440.2608(2).

53. SLI timely notified Defendants of the revocation of acceptance of Lots NS624H8 and NS624H9 upon discovery of the nonconformity and the material breach of the contract.

Wherefore, , SLI respectfully requests that this Honorable Court enter judgment in its favor against Defendants EA and HK, and award SLI damages, including at least $817,564.93, reasonable attorney fees and costs, and any other relief the Court deems just and equitable.

**COUNT III**
**Fraud**

54. SLI re-alleges and incorporates by reference the allegations of the above paragraphs.

55. Defendants Euro Alliance and HK Inno.N knowingly made false representations to SLI regarding the compliance of their products and manufacturing processes with U.S. FDA standards, including Current Good Manufacturing Practices (CGMP).

56. These representations were made in documentation and communications provided to SLI, intending to induce SLI to enter into the Purchase Order and rely on these assurances to secure temporary FDA approval for the importation of the products.

57. Defendants knew or should have known that their representations were false, as evidenced by the significant nonconformities found during the FDA inspection, which included failures in the sterilization process, environmental condition monitoring, and adherence to laboratory control specifications.

58. SLI relied on Defendants' fraudulent representations to its detriment, resulting in substantial financial losses, disruption of business operations, and reputational harm.

Wherefore, SLI respectfully requests that this Honorable Court enter judgment in its favor against Defendants EA and HK, and award SLI damages, including at least $817,564.93, plus

compensatory and punitive damages, in an amount to be determined at trial, reasonable attorney fees and costs, and any other relief the Court deems just and equitable.

**COUNT IV**
**Fraudulent Inducement**

59. SLI re-alleges and incorporates by reference the allegations of the above paragraphs.

60. Defendants Euro Alliance and HK Inno.N intentionally misled SLI by providing false information regarding the compliance of their products and operations with FDA standards, with the purpose of inducing SLI to enter into the Purchase Order.

61. The false representations were material to the transaction, as compliance with FDA regulations was a critical condition for SLI's agreement to purchase and distribute the products within the United States.

62. SLI was justified in relying on Defendants' representations, given their explicit assurances and the documentation provided, which purported to demonstrate compliance with FDA requirements.

63. As a direct result of Defendants' fraudulent inducement, SLI suffered significant damages, including financial losses, interruption of business activities, and damage to its reputation.

Wherefore, , SLI respectfully requests that this Honorable Court enter judgment in its favor against Defendants EA and HK, and award SLI damages, including at least $817,564.93, plus compensatory and punitive damages, in an amount to be determined at trial, reasonable attorney fees and costs, and any other relief the Court deems just and equitable.

(Signature on Next Page)

Respectfully submitted,

Dated: July 15, 2025

/s /Ari B. Berris (P60636)
BERRIS LAW FIRM, PLLC
***Attorney for Plaintiff***
42350 Grand River Ave
Novi, MI 48375
Tel: (248) 462-6556
Email: ari@berrislawfirm.com

# EXHIBIT "1"

***Terms and Conditions to***
***November 27, 2024***
***Blanket Purchase Order***
***Euro Alliance LLC-FZ & SLI Medical***
***Acknowledgment by HK Inno.N***

1. **Seller:**

   Euro Alliance LLC-FZ, The Meydan Hotel 1, Business Centre, Meydan, Dubai, U.A.E.

2. **Buyer:**

   Supply Line International Medical, LLC, a Michigan limited liability company

3. **Manufacturer:**

   HK Inno.N ("Manufacturer")
   239 OSONGSAENGMYEONG 2-RO, OSONG-EUP, HEUNGDEOK-GU, CHEONGJU-SI, CHUNGCHEONGBUK-DO, REPUBLIC OF KOREA

4. **Description of Goods:**

   HK Inno-N 0.9% Normal Saline (0.9% Sodium Chloride) Injection, 1000 mL, Korean Ministry for Food and Drug Safety ("KFDA") Approval Number 80, (U.S. FDA NDC Package Code 84988-1440-1) as further described in and conforming to attached Exhibit A (U.S. FDA Authorization for Import) ("Goods").

5. **Quantity:**

   This is a blanket purchase order for the following specific lots/quantities as and when released by Buyer as provided for below and subject to the terms of this purchase order.

| | Lot Number | Manufacturing date (YYYY.MM.DD) | Expiry date (YYYY.MM.DD) | Quantity (Cases) | Quantity (Bags) |
|---|---|---|---|---|---|
| 1 | NS624K4 | 2024.09.25 | 2026.03.24 | 5,445 | 54,450 |
| 2 | NS624K5 | 2024.10.02 | 2026.04.01 | 5,442 | 54,420 |
| 3 | NS624H8 | 2024.08.13 | 2026.02.12 | 5,430 | 54,300 |
| 4 | NS624H9 | 2024.08.13 | 2026.02.12 | 3,555 | 35,550 |
| 5 | NS624J0 | 2024.08.21 | 2026.02.20 | 5,442 | 54,420 |

| | | | | | |
|---|---|---|---|---|---|
| 6 | NS624J1 | 2024.08.22 | 2026.02.21 | 3,602 | 36,020 |
| 7 | NS624J2 | 2024.08.22 | 2026.02.21 | 3,611 | 36,110 |
| 8 | NS624J3 | 2024.08.29 | 2026.02.28 | 5,449 | 54,490 |
| 9 | NS624J4 | 2024.08.29 | 2026.02.28 | 3,595 | 35,950 |
| | | | | Total 41,571 | Total 415,710 |

This description of quantity may, at Buyer's option, be modified as provided in Paragraph 10.

6. **Packaging:**

- By lot (and not partial lots unless approved by buyer).
- 10 1000 ml bags per case.
- 60 cases per pallet with 60 approved DHCP letters.
- Each pallet to be labeled (4 sides; not top or bottom) with DHCP letter, in addition to all other external labeling required for export/import.
- Suitable for air/marine shipping (as designated by Buyer's release).
- As necessary and sufficient to maintain sterility and comply with Exhibit A (U.S. FDA Authorization Letter).
- Certificate of Analysis (per lot) in the form previously provided to Buyer.

7. **Delivery**:

To Buyer's designated shipper, upon Seller's receipt of a Release, as provided below.

FOB: Manufacturer's facility at 239 OSONGSAENGMYEONG 2-RO, OSONG-EUP, HEUNGDEOK-GU, CHEONGJU-SI, CHUNGCHEONGBUK-DO, REPUBLIC OF KOREA ("Manufacturer's Facility").

8. **Certifications**:

At the time of tender, and as a condition of Buyer's acceptance of each Lot, Seller shall provide Buyer (by email to mehta@euroalliancesa.com) with the following certifications:

- Certificate of Exportability and all other documents sufficient to authorize the immediate export of the goods to the U.S.A.

- Certificate of Compliance with Exhibit A (U.S. FDA Authorization Letter).
- All testing certifications as required by Exhibit A (U.S. FDA Authorization Letter), if any.

9. **Release**:

Seller shall tender delivery of, and Buyer shall be obligated to purchase, the Goods only after Buyer's written authorization to Seller by email to mehta@euroalliancesa.com ("Release"). Each Release shall specify the lot number, manufacturing date, and quantity to be delivered as directed by Buyer.

10. **Buyer's Option to Increase Quantity**:

Notwithstanding the description of the quantity of the Goods subject to this blanket purchase order, after Buyer's purchase of the lots specified in paragraph 5 and at Buyer's discretion, the quantity of goods which shall be subject to the terms of this purchase order may be increased by Buyer's electronic delivery to Seller at mehta@euroalliancesa.com of written notice of such increase. Provided however, that any portion of such lots which are non-conforming to the terms of this agreement shall not be considered for purposes of determining whether Buyer's option has arisen and that Buyer's option to increase the quantity subject to this agreement shall be limited to 20,000 case of the Goods per week (which amount may be modified only by a writing signed by Seller and Buyer.

11. **Choice of Laws**:

This purchase order and the agreement memorialized herein shall be governed by the laws of the State of Michigan, without regard to its choice of laws rules. Seller and Buyer each agree that the United Nations Convention on Contracts for the International Sale of Goods does not apply to this agreement.

12. **Dispute Resolution**:

Seller, Buyer and Manufacturer agree that any dispute arising from or relating to the terms of this purchase order, shall be resolved by binding arbitration pursuant to the terms of the Michigan Uniform Arbitration Act. Any such arbitration proceeding shall be conducted in Honolulu, Hawaii, unless otherwise agreed in a writing signed by Seller, Buyer and Manufacturer.

13. **Assurance of Availability of Goods; Buyer's Status as Intended Beneficiary; Exclusivity; Best Efforts; Maintenance of and Access to Records; Recall**:

Manufacturer acknowledges that it shall provide Seller with the quantity of conforming Goods necessary to permit Seller to fulfill its obligations to Buyer hereunder on such terms and conditions as have been agreed to between those parties and that Buyer is an intended beneficiary of Seller's contractual right to acquire and to distribute the Goods. Both Manufacturer and Seller acknowledge and agree that Buyer is the exclusive importer and distributor for the Goods in the U.S.A. for each of them, and that they shall not sell any such Goods to any person other than Buyer for distribution in the U.S.A. Both Manufacturer and Seller shall use their best efforts to assist Buyer, its customers, its agents, and any U.S.A. government agency requesting information related to the Goods, and for 5 years from the date of this purchase order shall maintain and provide Buyer, upon its written request, access to any and all records related to the quality of the Goods. If any of the Goods are recalled, Manufacture and Seller shall be solely responsible for all costs of any nature whatsoever related to such recall and shall hold Buyer harmless therefrom.

14. **Entire Agreement**:

This writing memorializes the entire agreement between Seller, Buyer, and Manufacturer regarding the subject matter hereof (the sale/purchase of the Goods) and supersedes all prior and contemporaneous written and/or oral negotiations and agreements pertaining thereto, other than Seller's and Manufacturer's respective Letters of Authorization appointing Buyer as their exclusive distributor of the Goods with respect to the U.S.A.

15. **Authority to Execute**:

Each person signing this purchase order represents to each other signer and to such other signer's respective principal(s) that they are duly authorized to do so and that the signer's principal intends to be bound by the terms contained herein.

"Seller"

Euro Alliance LLC-FZ

By: ____________________

Rakshit Mehta

Its: Director & Duly Authorized Agent

December 03, 2024

"Buyer"

Supply Line International Medical, LLC

By: ____________________

Joshua Kaplan

Its: Sole Member & Duly Authorized Agent

December 3, 2024

"Manufacturer"

HK Inno.N

By: ____________________

Its: Global Sales Team: Moon, Eun Jeong

December 03, 2024

# EXHIBIT "2"

## SETTLEMENT AGREEMENT AND CONDITIONAL RELEASE

This Settlement Agreement and Conditional Release (the "Agreement") is entered into as of the 7th day of August, 2025 ("Effective Date"), by and between Supply Line International Medical, LLC, a Michigan limited liability company, d/b/a SLI Medical ("SLI Medical"), Josh Kaplan ("Kaplan"), Lianaco, LLC, a Delaware limited liability company ("Lianaco"), and Asaf Fligelman ("Fligelman"), who are sometimes referred to herein collectively as the "Parties" and individually as a "Party." Additionally, SLI Medical and Kaplan are referred to herein collectively as the "SLI Parties" and Lianaco and Fligelman are referred to as the "Fligelman Parties").

## RECITALS

WHEREAS, certain disputes exist between, SLI Medical and Kaplan, and between the SLI Parties and the Fligelman Parties, pertaining to the repayment of: (a) Fligelman's loan through Lianaco of $332,568.00 to Kaplan ("the Fligelman-Kaplan Loan"); and (b) Kaplan's use of the proceeds of the Fligelman-Kaplan Loan for SLI Medical's benefit ("Kaplan-SLI Medical Loan") with respect to SLI Medical's purchase of certain goods (the "H.K. Inno Saline") for resale within the United States (the "Fligelman-Kaplan & Kaplan-SLI Medical Disputes").

WHEREAS, as more fully described in ***Exhibit 1*** hereto ("SLI Medical Demand Letter"), the Flieglman Parties has been advised by the SLI Parties that based upon a U.S. FDA inspection of the manufacturer's facilities in South Korean conducted by U.S. FDA, the results of which were reported to SLI Medical after tender of the relevant goods, the H.K. Inno Saline as tendered to SLI Medical did not conform to the relevant contract for the sale/purchase of such goods and that, consequently, SLI Medical believes it has a valid claim against the seller and manufacture of such goods under Article 2 of the Michigan Uniform Commercial Code to recoup damages as described in the SLI Medical Demand Letter (the "SLI Medical UCC Claim").

WHEREAS, each of the Parties desires to settle and resolve all claims, disputes, and differences between them with respect to the Fligelman-Kaplan Loan, the Kaplan-SLI Medical Loan, and the Fligelman-Kaplan & Kaplan-SLI Medical Disputes, without any admission of liability, and to avoid the expense and uncertainty of litigation.

WHEREAS, to accomplish such result, the parties have agreed that SLI Medical will assign the SLI Medical UCC Claim to the Fligelman Parties as payment by SLI Medical to Kaplan regarding the Kaplan-SLI Medical Loan and as payment by Kaplan to the Fligelman Parties regarding the Fligelman-Kaplan Loan, subject to the conditions and limitations described below.

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the Parties agree as follows:

**1. Assignment of SLI Medical UCC Claim.** SLI Medical hereby assigns to the Fligelman Parties all right(s), title and interest(s) in and to the SLI Medical UCC Claim, including all proceeds related thereto.

2. **Duty to Assist and Cooperate**. SLI Medical and Kaplan shall provide the Fligelman Parties any and all assistance and cooperation reasonably requested by him related to the prosecution of the SLI Medical UCC Claim, other than the expenditure of funds.

3. **Release of Claims by Fligelman.** Except as expressly provided herein, Fligelman Parties hereby releases and forever discharges any and all claims of any nature whatsoever which he has or may have as of the date of the Effective Date of this Agreement against Kaplan arising from and/or related to the Fligelman-Kaplan Loan, provided however, that Kaplan shall be released from liability on the Fligelman-Kaplan Loan only in the event that the Fligelman Parties is able to collect from the seller and manufacturer of the H.K. Inno Saline an amount at least equal to the balance which would have been otherwise due from Kaplan to the Fligelman Parties regarding the Fligelman-Kaplan Loan ("Full Loan Value") AND any and all costs of enforcing the SLI Medical UCC Claim ("Enforcement Costs"). In the event that the Fligelman Parties recovers some, but not all, of the Full Loan Value and/or the costs of enforcing the SLI Medical UCC Claim, then Kaplan shall be liable for any resulting deficiency. For example, and not by way of limitation, if the Fligelman Parties is successful in collecting all but $10,000.00 of the Full Loan Value and Enforcement Costs, then the Fligelman Parties' release of Kaplan as set forth above shall be deemed limited to all but such $10,000.00 and such release shall not preclude any action by the Fligelman Parties against Kaplan to collect such balance.

4. **Release of Claims by Kaplan.** Except as expressly provided herein, Kaplan hereby releases and forever discharges any and all claims of any nature whatsoever which he has or may have as of the date of the Effective Date of this Agreement against SLI Medical arising from and/or related to the Kaplan-SLI Medical Loan. *Provided however*, if the Fligelman Parties' is unable to collect from the seller and manufacturer of the H.K. Inno Saline an amount at least equal to the Full Loan Value and Enforcement Costs and, thereafter, the Fligelman Parties prosecute any claim against Kaplan as permitted pursuant to Paragraph 3, above, then the foregoing release by Kaplan shall be deemed to not release SLI Medical from any resulting shortfall. For example, and not by way of limitation, if the Fligelman Parties is successful in collecting all but $10,000.00 of the Full Loan Value and Enforcement Costs, then the Fligelman Parties's release of Kaplan and Kaplan's release of SLI Medical as set forth above shall be deemed limited to all but such $10,000.00 and such release shall not preclude any action by Kaplan against SLI Medical to collect such balance.

5. **Confidentiality.** The Parties agree to keep the terms and conditions of this Agreement, as well as the underlying dispute, strictly confidential and not to disclose any information to any third party, except as required by law or with the prior written consent of the other Party.

6. **Representations & Warranties**. The Parties, and each of them, acknowledge and agree that they have entered into this Agreement of their own free will and volition and that they have not relied upon ay statement or representation by any of them to any of any other(s) except as expressly set forth in this writing.

7. **No Admission of Liability.** This Agreement is not an admission of liability by any Party. The Parties acknowledge that this Agreement is entered into solely for the purpose of settling and resolving the Fligelman-Kaplan & Kaplan-SLI Medical Disputes.

**8. Governing Law; Forum Selection.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of laws principles. Any action arising from or related to this Agreement shall be commenced, if at all, under binding mediation with a mediator to be chosen by the parties. If the parties cannot agree to a mediator within 10 days of an action arising, than the parties will go to Beit Din ( for binding adjudication) to be done in person or on zoom / teams within 10 days.

**9. Amendments.** Any amendments or modifications to this Agreement shall be ineffective and of no legal force or effect unless made in writing and signed by the Parties.

**10. Severability.** If any provision of this Agreement is found to be invalid or unenforceable, the remaining provisions shall continue in full force and effect.

**11. Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**12. Entire Agreement**. The Parties acknowledge and agree that this writing is intended by them to constitute a fully integrated writing expressing the entire agreement between them with respect to the subject matter hereof (*i.e.,* the settlement of the Fligelman-Kaplan & Kaplan-SLI Medical Disputes) and supersedes all prior and contemporaneous agreements, understandings, negotiations, and discussions

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first above written.

"**Lianaco**"

Lianaco, LLC,
a Delaware limited liability company

Asaf Fligelman

Asaf Fligelman,
Its: Partner

"**SLI Medical**"

Supply Line International Medical, LLC
a Michigan limited liability company

Kenneth B. Morgan

Kenneth B. Morgan,
Member of the Board

"**Fligelman**"

Asaf Fligelman

Asaf Fligelman

"**Kaplan**"

Josh Kaplan

Josh Kaplan

**Exhibit "1"**

SLI Medical Demand Letter

# EXHIBIT "3"

FDA U.S. FOOD & DRUG ADMINISTRATION

U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
www.fda.gov

Via UPS
Return Receipt Requested

March 28, 2025

Mr. So Young Chang
Executive Director
HK Inno. N Corporation
239, Osongsaengmyeong, 2-ro, Osong-eup
Heungdeok-gu, Cheongju-si, Chungbuk,
Republic of Korea

Dear Mr. Chang:

The U.S. Food and Drug Administration (FDA) conducted an inspection at HK Inno. N Corporation, FEI 3022306074, located at 239, Osongsaengmyeong, 2-ro, Osong-eup Heungdeok-gu, Cheongju-si, Chungbuk, from January 16 to January 24, 2025. FDA has determined that the inspection classification of this facility is "official action indicated" (OAI).[1]

Based on this inspection, this facility is considered to be in an unacceptable state of compliance with regards to current good manufacturing practice (CGMP). This facility may be subject to a CGMP regulatory or enforcement action based on this inspection, and FDA may withhold approval of any pending applications or supplements in which this facility is listed.

If you have any questions regarding this letter, you may contact CDER-OC-OMQ-Communications@fda.hhs.gov.

Sincerely,

Lance M. De Souza -S
Digitally signed by Lance M. De Souza -S
Date: 2025.03.28 07:54:39 -07'00'

FOR Milind Ganjawala
Acting Director
Division of Drug Quality III
Office of Manufacturing Quality
Office of Compliance
Center for Drug Evaluation and Research

Enclosure: Form FDA 483

[1] See Inspection Classification Definitions, at https://www.fda.gov/ICECI/Inspections/ucm223231.htm.

CC:
Registered US Agent:
Josh Kaplan
President
SLI MEDICAL LLC
42350 Grand River Ave.
Novi, MI 48375

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

This document lists observations made by the FDA representative(s) during the inspection of your facility. They are inspectional observations, and do not represent a final Agency determination regarding your compliance. If you have an objection regarding an observation, or have implemented, or plan to implement, corrective action in response to an observation, you may discuss the objection or action with the FDA representative(s) during the inspection or submit this information to FDA at the address above. If you have any questions, please contact FDA at the phone number and address above.

**DURING AN INSPECTION OF YOUR FIRM WE OBSERVED:**

## OBSERVATION 1

Procedures designed to prevent microbiological contamination of drug products purporting to be sterile do not include adequate validation of the sterilization process. Specifically,

Your firm uses two Superheated Water Spray Sterilizers to terminally sterilize batches of SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL) bags. During review of your procedures and validation, the following discrepancies were noted:

A. Adequate justification could not be provided for not performing separate sterility testing on the sub batches needed to sterilize an entire batch of SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL). Depending on the number of bags produced, the number of terminal sterilization cycles needed varies. For example,
   - 18,226 bags – 4 cycles (7 columns/cycle, 20 trays/column, 40 bags/tray)
   - 37,359 bags – 7 cycles
   - 56,158 bags – 10 cycles

   This results in an inadequate representation of bags being sampled for each cycle. For example, for a 56,158-batch size instead of testing 10 bags per cycle, for a total of ten sterility tests; one composite sample is tested, composed of 10 bags collected across the 10 cycles for a total of one sterility test. This reduces the number of bags being sampled for sterility from 10 bags/cycle to 1 bag/cycle.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | DATE ISSUED |
|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:43:52 -08'00'<br>Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:01:25 -08'00' X<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:50:33 -08'00' | 01/24/2025 |

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>FOOD AND DRUG ADMINISTRATION | |
|---|---|
| DISTRICT ADDRESS AND PHONE NUMBER<br>12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | DATE(S) OF INSPECTION<br>01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |
| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED<br>Ms. So Young Chang, Executive Director / Manufacturing Headquarter | |
| FIRM NAME<br>HK inno.N Corporation | STREET ADDRESS<br>239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY<br>Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | TYPE ESTABLISHMENT INSPECTED<br>Manufacturer |

B. No adequate justification for the change in temperature during the qualification of the two Superheated Water Spray Sterilizers:
   - Reducing the temperature from 122 ± 1°C to 121 ± 1°C during annual qualification, dated 24MAY2024.
   - Changing the temperature from 121 ± 1°C to 120 – 123°C using a risk assessment/change control, dated 14NOV2024.

C. Sterility samples are taken at random and not from the coldest area of the sterilizer as determined by the qualification of the Superheated Water Spray Sterilizers. The location of the sample(s) taken from each cycle is not documented.

D. A sterilization load monitor, either in the form of a physical, chemical, or biological indicator, is not included with each load (cycle). Biological indicators are only used during the yearly qualification of the sterilizer.

E. During routine terminal sterilization, the temperature is monitored using 10 temperature probes on the wall of the sterilizer. Temperature inside the sterilizer is controlled using a control sensor located in a pipe 1.07 meters from the sterilizer. The correlation between the temperature recorded on these probes to the 15 validators (wireless thermocouples) placed throughout the load (inside product) during heat penetration studies have not been performed.

F. The holding time for SODIUM CHLORIDE 0.9% Intravenous Infusion (1000ml) has not been specified. This resulted in the approval of the 3rd heat distribution study (minimum load) being approved with a holding time of 11.8 minutes during PQR-M-0005-PR-02 Performance Qualification Protocol and Report for the Superheated Water Spray Sterilizer, dated 14JAN2025.

G. Raw data is not documented and retained.

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S (Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:02:03 -08'00')<br>Rowena S. Nguyen -S (Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:44:13 -08'00')<br>Homero W. Aguilar -S (Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:51:09 -08'00') | 01/24/2025 |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |
| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED<br>Ms. So Young Chang, Executive Director / Manufacturing Headquarter | |
| FIRM NAME<br>HK inno.N Corporation | STREET ADDRESS<br>239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY<br>Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | TYPE ESTABLISHMENT INSPECTED<br>Manufacturer |

1. The Z value and reference temperature is set by the operator on the wireless thermocouple software prior to having the software calculate the F0 values. The settings used to calculate the F0 value during annual requalification is not documented.
2. During the validations of the two Superheated Water Spray Sterilizers, the locations of where the BIs and thermocouples probes were placed was not documented. It is assumed the operator followed the validation protocol.

## OBSERVATION 2

Aseptic processing areas are deficient regarding the system for monitoring environmental conditions. Specifically,

A. Dynamic conditions are not taken into consideration when performing environmental monitoring. Your quality control management confirmed that there is no distinction between dynamic conditions and static conditions when performing environmental monitoring. Particulate matter environmental monitoring (EM) is performed per SOP-O-E-041. EM documentation does not specify dynamic or static conditions. There is no assurance that any of the EM data reviewed was taken in dynamic conditions.

On 22JAN2025 when I was observing sampling locations near equipment, locations 6, 9, & 10, of machine one during dynamic conditions, the air particle counter that was being used generated flow rate alarms. This was attributed to equipment malfunction and environmental monitoring was paused.

On 23JAN2025 during monitoring of machine two, there were particulate matter action levels reached during dynamic conditions at locations where bag formation takes place, locations 4 & 5. Prior to these two instances there had been no deviations or out of specification events for particulate monitoring over the previous two years. It is critical that environmental monitoring during sterile

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:02:35 -08'00'<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:44:39 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:51:42 -08'00' | 01/24/2025 |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | Manufacturer |

product manufacturing is performed in the most critical areas during dynamic conditions to ensure these processes are occurring under a state of control.

B. During review of environmental monitoring data for line A, for the past 18 months, there was constant microbial recovery. No identification of microorganisms took place.

During a more detailed review of 3 months of EM raw data (May 2024- July 2024) from Line A, there were instances where filamentous microbes were recovered as well as single colony forming units that were approximately 30% of confluency on the agar plate. Although the colony forming units recovered are within the alert and action limits, there should be some review into what the microbial flora in line A production room is. Currently, microbes are only sent for identification for-cause. There was no consideration for the impact of eukaryotic organisms in a sterile injectable environment.

C. There is no scientific justification for environmental monitoring particulate sampling with a tube length greater than 1 meter.

On 22JAN2025 and 23JAN2025 I entered Line A on the second floor of the IV building to observe environmental monitoring. During the particulate air monitoring the tubing used to connect the sampling probe to the machine was 2 meters long. There are two additional tubes that are used for environmental monitoring of particulates in line A, which are 1.5 meters in length. To ensure accurate particulate measurements, the tubing used to collect the data should not be convoluted in a manner that may disrupt particles from reaching the sampling machine or greater than 1 meter in length without scientific justification.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:45:03 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:03:08 -08'00'<br>X<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:52:15 -08'00' | 01/24/2025 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

## OBSERVATION 3

Written specifications for laboratory controls do not include a description of the testing procedures used. Specifically,

Your microbial limits testing procedure is inadequate for recovery.

On 21JAN2025 I observed microbial limits testing of Plasma Solution A Injection through the viewing window of M-1-233 Microbial Limit Test Lab. While performing the microbial limits testing, I observed the manifold heads being sprayed with the disinfectant Klercide low residue quat prior to the filter membrane being placed onto the manifold head. The membrane filter, once placed onto the manifold head, became saturated with disinfectant. Following immediate saturation of the membrane filter with disinfectant, sample was filtered over the wet membrane and a single rinse followed. Your firm confirmed that this is the method that microbial limits testing is performed for all samples. Spraying the manifold head is not in the testing procedure. The Microbial limits procedure, SOP-O-F-058, does not include a disinfectant step on the manifold head. Furthermore, the current method is essentially testing the microbial limits of product in the presence of disinfectant. According to your firms Disinfectant Efficacy Validation Report, there is no possibility of microbial recovery in the presence of Klercide low residue quat. The possibility of false negatives exists in microbial limits testing results.

## OBSERVATION 4

Procedures designed to prevent microbiological contamination of drug products purporting to be sterile are not established, written, and followed. Specifically,

A. There is no assurance that the leak tester (M-LKT-001) used to perform in-process control (IPC) can detect leaks. The following discrepancies were noted during review of the IOQ (installation/operation qualification) and procedures associated with IPC leak testing:

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:45:25 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:03:47 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:52:47 -08'00' | 01/24/2025 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | Manufacturer |

1. Pressure is not monitored during IPC leak checks performed during the filling of IV bags. This contradicts the IOQ of the leak tester performed 28AUG2024, as well as SOP O-C-709 Use and Management Method of the Infusion Solution Manual Leak Tester, v2, effective 20JUN2022 which both mention the maintaining of pressure to confirm no leaks are present. Production personnel only look for visible leaks at the end of testing and document adequate/not adequate in the batch record. Management stated only particle defects were important and all other defects are pulled to minimize customer complaints.

2. On 16JAN2025 and 20JAN2025, I observed the leak testing of 1000ml intravenous bags filled on line A during the filling of Plasma Solution A Injection, 1000ml, batch PS125B0 and PS125B4 respectively. All four bags tested showed a reduction of pressure during the 15-minute leak test. All bags were documented as passing the leak test and marked as "adequate" in their respective batch records.

3. The pressure monitor is an analog system resulting in the inability to accurately record the starting pressure. No printout of the pressure is available on this piece of equipment.

B. The following discrepancies were noted during the evaluation of your visual inspection procedures and practices. For example:

Visual Inspection

1. You routinely manufacture sterile injectable products and perform 100% visual inspection without defect limits (action or alert) for individual defects as well as not having an overall defect limit. Only an overall yield for batch filling is calculated. This overall yield does not include the leaking bags found during the packaging visual inspection which takes place after the outer bag is added. This is significant as not being able to identify or investigate batches with abnormally high defect levels (for example foreign particles or leaking bags) would be limited. High reject rates could suggest a loss of GMP control.

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:45:47 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:04:30 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:53:27 -08'00' | 01/24/2025 |
|---|---|---|---|

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION / FEI NUMBER |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

2. During visual inspection, the conveyer is set to inspect 58-63 bags per minute. The bags pass through a visual inspector viewing the bags in front of a white background followed by a different visual inspector viewing the bags in front of a black background. This results in a single 1000ml bag being inspected for a total of approximately two seconds. This limited time frame potentially hinders the inspectors' ability to detect small particles.

3. The visual inspectors only view one side of bag as it passes by on a conveyor. This results in only one side of the bag being inspected for port defects.

4. AQL testing is not performed by quality.

5. Defects found during visual inspection are not trended. Particles are only categorized as foreign matter and are not further identified by color (black/white/blue/yellow), material (plastic, foil, filter) or thin fiber (hair/thread). Not collecting this information limits your ability to investigate the source of these particles.

Visual Inspection Qualification

6. Visual inspectors are only trained to detect particles even though additional potential defects are listed in the batch record. The defects in the batch record are bag formation, damage, leak on edges, bad printing, port insert defect, and missing port. These defects are not part of the visual inspector qualification.

7. Visual inspection qualification only utilizes one official test kit for 1000ml bags. This results in an investigator being tested on the same kit. For example, during initial qualification, the visual inspector tests with the same kit, three times in a row. For example, visual inspector (JYH), initially qualified on 06JAN2025, was tested using the same visual inspection kit from 7:40-7:49, 7:51-8:00, and 8:01-8:08.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) | SIGNATURE | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:05:05 -08'00'<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:46:09 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:54:02 -08'00' | 01/24/2025 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

8. The official test kit contains 100 - 1000ml bags, 50% of which contain defects. The bags are labeled 1 to 100 with the labels in full view of the inspector.

9. The visual inspection qualification is not reflective of routine production.

   Visual inspection operators are qualified by inspecting 100 bags in the official test kit against a white background for 2 minutes. The remaining "good" bags are then reinspected by the same operator with a black background for another two minutes. The defects from both inspections are combined and evaluated.

   During routine production, one operator inspects the bags against a white background followed by a different operator inspecting the bags against a black background.

   Combining the score during qualification can hide a failing score from the white or black background. Additionally, the start/stop times of the two-minute tests, and the conveyor speed used during qualification is not documented.

Visual Inspection Kit

10. The size of the particles in the visual inspection kit are unknown. According to SOP-O-B-700 Visual Inspection Qualification procedure states the visual inspection test kit should contain ten large particles (5mm x 3mm x 2mm, ± 0.5mm), 20 medium particles (3mm x 2mm x1.5mm ± 0.5mm), and 20 small particles (1mm x 1mm x 1mm, ± 0.5mm). Review of the visual inspection kit with management determined only 1 bag had a particle that was approximately 1.5mm x 1.5mm. Due to the size of the particles in the official test kit, it is unclear whether visual inspectors can see particles smaller than 1500μm.

11. The particle defects contained in the visual inspection kit are not random. 50% of the official test kit contains defects (50 bags):
    - 10 bags containing black particles.

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:46:32 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:05:48 -08'00'<br>X<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:54:37 -08'00' | 01/24/2025 |

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

- 10 bags containing a "thin fiber" - 5 white/5 black particles.
- 10 bags containing "white particles" – 5 plastic/5 filter particles.
- 10 bags containing "fine particles" – 5 blue/5 yellow particles.
- 10 bags containing "miscellaneous particles" – 5 brown/5 red particles.

Only particle defects are represented in the visual inspection kit.

12. During the review of the official visual inspection test kit prepared 14AUG2024, two out of 10 boxes, used to store the kit, were wet inside. What bags were leaking was not determined during our review.

**OBSERVATION 5**

Written records of investigations into unexplained discrepancies do not always include the conclusions and follow-up. Specifically,

A. No investigation into recovered gram-negative organisms has taken place.

I reviewed a comprehensive list of in-house microbial identifications. There were multiple instances where gram negative prokaryotes were identified at inno.N Osong plant. Although the potential for microbial contamination is low, gram-negative prokaryotes are the source of endotoxin contamination. It should be taken into consideration the potential of endotoxin contamination being carried through into finished product due to the known recovery of gram-negative bacteria.

B. Risk assessment RISK-O-24-0517-0020 was initiated to investigate the complaints related to infusion products for 2023, initiated 17MAY2024 – closed 21MAY2024. This risk assessment generated 5 CAPAs which determined the most sensitive area on the bag is the outer joint. All of these CAPAs were closed by Oct 31st. None of these CAPAs resulted in a change to the process that would reduce leaks in the bags or increase the frequency of detection. Although the risk assessment should have been categorized as critical, it was mistakenly given a minor rating level resulting in no

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:06:31 -08'00'<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:46:58 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:55:12 -08'00' | 01/24/2025 |
|---|---|---|---|

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED |
|---|
| Ms. So Young Chang, Executive Director / Manufacturing Headquarter |

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | Manufacturer |

effectiveness checks being performed. No other CAPAs to address the leakage problem have been initiated.

C. During periodic checking of stability samples, leaking intravenous bags are discarded without investigating the cause of the defect:
   - 01JAN2025 – 1 leaking bag was discarded.
   - 28OCT2024 – 19 leaking bags were discarded.

D. On 21DEC2024, 2 bags of finished drug product SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL) lot NS624L3 (EXP: 21APR2026) were returned by your customer due to leaking. Then on 31DEC2024, your distribution center in Gunpo returned 2 boxes (10 bags each box), also due to leaking observed on the outside of the box. The QA team manager stated that damage to the box caused the bags to leak. No investigation was performed to verify where the leak took place and the potential causes for the leaks.

E. On 17JAN2025 I reviewed deviation reports DR-O-23-1221 and DR-O-24-0366 for IV bags made on line B. In both instances the deviations were initiated because of sterility failures. It was determined by your firm that these were deviations and not sterility failures due to the contamination being introduced by the environment. When reviewing the reports in, both instances, your negative controls were performed satisfactorily. Furthermore, your environmental monitoring data from those test dates did not recover any of the microbes that were identified in the failures. The satisfactory controls that were performed during the processes are indicative that the sterility results received were valid. Re-testing took place with no justification and product was processed according to the passing results. Any sterility failure is indicative of the presence of microbes in finished sterile product batch.

**OBSERVATION 6**

The quality control unit lacks authority to fully investigate errors that have occurred. Specifically,

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:47:21 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:07:13 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:55:48 -08'00' | 01/24/2025 |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |
| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED<br>Ms. So Young Chang, Executive Director / Manufacturing Headquarter | |
| FIRM NAME<br>HK inno.N Corporation | STREET ADDRESS<br>239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY<br>Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | TYPE ESTABLISHMENT INSPECTED<br>Manufacturer |

A. SOP-O-C-727 Management and Usage of Sterile Tunnel used for IV Products lists a table of deviations production can execute prior to getting QA approval. This list covers the following deviations during the heating phase, exposure interval (time control sensor reaches 121°C to end of sterilization cycle) and cooling interval: power off, utility error, steam valve error, sterilizer door leak, and sterilizer temperature sensor malfunction. The immediate actions listed varies from additional sterilization, additional physiochemistry or sterility testing or destruction of the affected cycle.

B. Deviations were not written when discrepancies were noted during the performance qualification for the two superheated water spray sterilizers, dated 24MAY2024. Review of the report showed numerous excursions from the specification of **121** ± **1**°C during the thermal heat distribution test. For example:

| **Sterilizer - M-SHS-001** | **Sterilizer - M-SHS-002** |
|---|---|
| Empty Condition<br>1st round: **118.3-123.3**°C<br>2nd round: **118.3-123.3**°C<br>3rd round: **119.1-123.4**°C | Empty Condition<br>1st round: **119.3-123.5**°C<br>2nd round: 120.5-**123.3**°C<br>3rd round: **119.8-123.4**°C |
| Maximum Loading Conditions<br>1st round: **117.4-122.5**°C<br>2nd round: **119.0-122.4**°C<br>3rd round: **119.0-122.6**°C | Maximum Loading Conditions<br>1st round: **119.7-122.3**°C<br>3rd round: **119.8-122.3**°C |
| Minimum Loading Conditions<br>1st round: **117.6-122.6**°C<br>2nd round: **117.4-122.7**°C | Minimum Loading Conditions<br>1st round: **114.2**-122.0°C<br>2nd round: **117.8-122.3**°C |

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) | SIGNATURE | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S (Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:08:03 -08'00')<br>Homero W. Aguilar -S (Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:56:27 -08'00')<br>Rowena S. Nguyen -S (Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:47:50 -08'00') | 01/24/2025 |

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | Manufacturer |

| | |
|---|---|
| 3rd round: **115.1-122.5°C** | 3rd round: **117.1-122.5°C** |

The only condition that met their specification was Maximum Loading Conditions 2nd round.

**OBSERVATION 7**

Verification of the suitability of the testing methods is deficient in that they do not include all testing requirements. Specifically,

There are explicit testing requirements that are missing in your method validations.

A. No method validation has taken place at inno.N Osong location for microbiology microbial limits testing. The current microbial limits procedure, SOP-O-F-058, designates the methodology for testing the bioburden levels of WFI and finished products. No validation study was ever conducted to justify the rationale of the method. All testing procedures used for product manufacturing should be validated and scientifically justified.

B. On 17JAN2025 I reviewed your endotoxin method validation for SODIUM CHLORIDE 0.9% Intravenous Solution. During review of the validation, it was noted that the pH of the product in the presence of lysate buffer was not conducted. To ensure the validity of endotoxin data, you must demonstrate that in the presence of the sample, the lysate buffer remains within the manufacturers specified pH range to ensure reactivity can take place.

**OBSERVATION 8**

Each component is not tested for conformity with all appropriate written specifications for purity, strength, and quality. Specifically,

Components used as the primary packaging for finished drug product are not adequately tested. No extractable leachable testing is performed on the film used to form the container for your finished drug

| SEE REVERSE OF THIS PAGE | EMPLOYEE(S) SIGNATURE | | DATE ISSUED |
|---|---|---|---|
| | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:48:18 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:08:42 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:57:38 -08'00' | 01/24/2025 |

| DEPARTMENT OF HEALTH AND HUMAN SERVICES<br>FOOD AND DRUG ADMINISTRATION | |
|---|---|
| DISTRICT ADDRESS AND PHONE NUMBER<br>12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | DATE(S) OF INSPECTION<br>01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |
| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED<br>Ms. So Young Chang, Executive Director / Manufacturing Headquarter | |
| FIRM NAME<br>HK inno.N Corporation | STREET ADDRESS<br>239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY<br>Heungdeok-gu, Cheongju-si, Chungbuk.<br>Republic of Korea | TYPE ESTABLISHMENT INSPECTED<br>Manufacturer |

product SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL). These products can be heated up to 123 °C during steam sterilization for 42 minutes. On 20JAN2025, 2 reserve samples of this drug product were observed to have some sections of the bag and outer bag adhered. One with approximately 1 inch by 1 inch and the other approximately 1 inch by 3 inch in size. There is no assurance that the manufacturing process is not producing extractables or leachables into the finished product.

**OBSERVATION 9**

Employees are not given training in the particular operations they perform as part of their function. Specifically,

Training of personnel participating in the filling of SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL) bags is deficient in that procedures do not exist describing how to perform inherent activities such as head wielding mold adjustment, exchange of roll film, blue foil, or PP tube roll, addition of twist off protectors (TOP) or medication tips (MT). Execution of these activities incorrectly could potentially add additional particles or viable organisms into the area.

**OBSERVATION 10**

The quality control unit lacks responsibility to approve all procedures or specifications impacting on the identity, strength, quality, purity of drug products. Specifically,

Your quality unit (QU),

A. Failed to adequately control the issuance and reconciliation of uncontrolled loose forms used for documenting GMP activities. For example conducting visual inspection after product is filled, visual inspection after the outer packaging is added, measuring WFI specifications, and measuring pH of finished product. There are approximately 600 forms that can be accessed on your Electronic Document Management (EDM) system and can be printed multiple times without any limit. There

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:48:43 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:09:20 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:58:20 -08'00' | 01/24/2025 |
|---|---|---|---|

DEPARTMENT OF HEALTH AND HUMAN SERVICES
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
|---|---|
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025<br>FEI NUMBER<br>3022306074 |

NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED
Ms. So Young Chang, Executive Director / Manufacturing Headquarter

| FIRM NAME | STREET ADDRESS |
|---|---|
| HK inno.N Corporation | 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY | TYPE ESTABLISHMENT INSPECTED |
| Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | Manufacturer |

has been no evaluation performed to determine which of these forms would contain raw data. Forms which contain raw data should be controlled.

B. Failed to ensure that the time when critical activities took place during the manufacture of SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL) are documented. Examples of critical activities include start and stop times of the forming filling sealing (FFS) machine, start times of in process leak tests of bags and times when interventions took place such as the exchange of roll film, blue foil, or PP tube roll, or the addition of twist off protectors (TOP) or medication tips (MT). Without the documentation of what time these activities took place, there is no traceability to perform adequate investigations into deviations in environmental monitoring, complaints or out of specifications.

## OBSERVATION 11

Labeling and packaging materials are not representatively sampled before use in packaging and labeling of a drug product. Specifically,

Sampling for visual inspection and testing of film is not based on statistical rationale.

On 08JUL2024, 3 rolls of film with internal lot number 8000003435 were sampled for AQL visual inspection from 1 pallet that holds 8 rolls. There were approximately 20 pallets in the lot.

In addition, 1 of the 3 rolls was chosen for testing, out of the 160 rolls that came in this lot. The film was used as the primary packaging for the manufacturing of finished drug product SODIUM CHLORIDE 0.9% Intravenous Infusion (1000mL) lots NS624H8 (EXP: 12FEB2026) and NS624H9 (EXP: 12FEB2026). Both lots were released to the market 16DEC2024.

The same sampling practice is performed with other components including the medication tip (yellow cap), TOP (blue cap) and tubing used to form the intravenous bag for finished drug product SODIUM

| SEE REVERSE OF THIS PAGE | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:10:01 -08'00'<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:49:06 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:58:55 -08'00' | 01/24/2025 |
|---|---|---|---|

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

| DISTRICT ADDRESS AND PHONE NUMBER | DATE(S) OF INSPECTION |
| --- | --- |
| 12420 Parklawn Drive, Room 2032<br>Rockville, MD 20857 | 01/16/2025-01/24/2025 |
| | FEI NUMBER<br>3022306074 |

| NAME AND TITLE OF INDIVIDUAL TO WHOM REPORT ISSUED | |
| --- | --- |
| Ms. So Young Chang, Executive Director / Manufacturing Headquarter | |
| FIRM NAME: HK inno.N Corporation | STREET ADDRESS: 239, Osongsaengmyeong, 2-ro, Osong-eup |
| CITY, STATE, ZIP CODE, COUNTRY: Heungdeok-gu, Cheongju-si, Chungbuk. Republic of Korea | TYPE ESTABLISHMENT INSPECTED: Manufacturer |

CHLORIDE 0.9% Intravenous Infusion (1000mL). This sampling is not representative of the entire lot and there is no assurance the testing results are adequate.

| | | | |
| --- | --- | --- | --- |
| **SEE REVERSE OF THIS PAGE** | Sandra A. Boyd - Drug National Expert<br>Homero W. Aguilar - Microbiologist<br>Rowena S. Nguyen - Investigator<br>Rowena S. Nguyen -S Digitally signed by Rowena S. Nguyen -S Date: 2025.01.23 23:49:31 -08'00' | Sandra A. Boyd -S Digitally signed by Sandra A. Boyd -S Date: 2025.01.24 00:13:00 -08'00'<br>Homero W. Aguilar -S Digitally signed by Homero W. Aguilar -S Date: 2025.01.23 23:59:29 -08'00' | 01/24/2025 |

The observations of objectionable conditions and practices listed on the front of this form are reported:

1. Pursuant to Section 704(b) of the Federal Food, Drug and Cosmetic Act, or
2. To assist firms inspected in complying with the Acts and regulations enforced by the Food and Drug Administration.

Section 704(b) of the Federal Food, Drug, and Cosmetic Act (21 USC 374(b)) provides:

"Upon completion of any such inspection of a factory, warehouse, consulting laboratory, or other establishment, and prior to leaving the premises, the officer or employee making the inspection shall give to the owner, operator, or agent in charge a report in writing setting forth any conditions or practices observed by him which, in his judgment, indicate that any food, drug, device, or cosmetic in such establishment (1) consists in whole or in part of any filthy, putrid, or decomposed substance, or (2) has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health. A copy of such report shall be sent promptly to the Secretary."