UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIANACO, LLC,

Plaintiff,

v.

EURO ALLIANCE and HK INNO.N,

Defendants.

Case No. 25-12510
Honorable Laurie J. Michelson

**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S EX PARTE MOTION FOR ALTERNATE SERVICE [7]**

On August 12, 2025, Lianaco, LLC[1] filed this suit against Euro Alliance, a medical supply company located in the United Arab Emirates, and HK Inno.N, a medical manufacturing company located in the Republic of Korea. (ECF No. 1.) Lianaco asserts claims for breach of contract and fraud as a result of the non-conforming IV-fluid provided by Euro Alliance and manufactured by HK. (*Id.*)

Five months after the issuance of the summonses, there was still no service activity. The Court recognized, however, that service on the defendants would likely be through the time-consuming Hague Convention or other international requirements. *See* Fed. R. Civ. P. 4(f). Thus, the Court requested a written status report from Plaintiff detailing its efforts to serve the defendants and estimating the time needed to finalize service. (ECF No. 4.) In response, Plaintiff's counsel advised

[1] Supply line International Medical, LLC, a medical supply company located in Novi, Michigan, assigned the right to sue in this case to Lianaco pursuant to a settlement agreement. (ECF No. 1, PageID.1.)

that he had contacted the defendants by mail and email. (ECF No. 5.) He did not hear back from Euro Alliance. (*Id.*) He had, though, been in contact with two lawyers for HK and engaged in some settlement discussions. (*Id.*) Counsel for HK refused to accept service. (*Id.*)

Two months after submitting the status report, Plaintiff filed a motion for alternate service. (ECF No. 7.) The Court finds this route to be premature. Thus, the motion is DENIED.

**I.**

While SLI and HK were doing business together, they communicated by email. So Plaintiff's counsel has email addresses for HK's executive director and a member of its global business team. (ECF No. 7, PageID.59.) He has also been in contact with lawyers from a Korean law firm who represent HK. (*Id.*) With respect to Euro Alliance, counsel has an email address for the owner and contact information through WhatsApp. (*Id.* at PageID.61.) Plaintiff contends that "[d]espite diligent efforts, [it] has been unable to effectuate service upon Defendants through conventional means and now seeks leave of Court to serve each Defendant by alternative means reasonably calculated to provide notice of this action," (*id.*), i.e., international mail, email, WhatsApp, and through known U.S. counsel or business affiliates. (*Id.*) Plaintiff, however, does not identify the "conventional means" attempted or why they were unsuccessful.

## II.

Federal Rule of Civil Procedure 4(h) authorizes service of process on an international business in the same "manner prescribed by Rule 4(f) for serving an individual, except personal delivery . . . " Fed. R. Civ. P. 4(h)(2). In turn, Rule 4(f) provides for service:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

Plaintiff acknowledges that the Republic of Korea—where HK is located—is a signatory to the Hague Convention. (ECF No. 7, PageID.60.) The UAE—where Euro Alliance is located—is not. Thus, suggests Plaintiff, traditional service would be "through letters rogatory or diplomatic channels." (*Id.*) Rather than go through these channels, Plaintiff seeks permission to utilize Rule 4(f)(3) to serve Defendants by international mail, email, and WhatsApp. (*Id.* at PageID.61.)

Another district court in this Circuit, surveying a large swath of case law, recently summarized the governing legal principles as follows:

> The Sixth Circuit has not directly addressed whether a party must first attempt service through the Hague Convention pursuant to Rule 4(f)(1) before seeking leave to use alternative methods of service under Rule 4(f)(3). Many district courts within this Circuit have concluded that a

> party need not do so, finding that there is no hierarchy or preference among the methods of service set forth in Rule 4(f). [citing cases].
>
> Other district courts have expressly disagreed, finding that, if the Hague Convention is applicable, Rule 4(f) requires that parties first attempt service by the means designated in the Convention pursuant to Rule 4(f)(1). [citing cases] Still other district courts within the Sixth Circuit have not expressly decided the issue but have noted that the "preferred method for service of a foreign party is service pursuant to the methods authorized by" the Hague Convention. [citing cases.]
>
> As regards Rule 4(f)(3), courts agree that service under that Rule must be (1) directed by the court; and (2) not prohibited by international agreement. [citing cases.] Courts have further found that, before service may be authorized under that Rule, parties may be required to show that they have "reasonably attempted to effectuate service on the defendant, and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." [citing cases]
>
> Lastly, the Court must ensure that alternative means of service under Rule 4(f)(3) "comport with constitutional notions of due process, namely that the service of process be reasonably calculated, under all the circumstances, to apprize [sic] interested parties of the pendency of the action and afford them an opportunity to present their objections." [citing cases.]

*Sophia Parker Studios, Inc. v. Temperley*, No. 24-02086, 2025 U.S. Dist. LEXIS 18486, at *16–18 (N.D. Ohio Feb. 3, 2025).

It does not appear that Plaintiff has attempted to serve HK pursuant to the Hague Convention. Instead, Plaintiff contends that alternate service should be permitted under Rule 4(f)(3) because the Hague Convention "procedures are slow and burdensome, often requiring 3–6 months or longer for completion." (ECF No. 7, PageID.60.) That may be. But "[t]o cite the inherent costs and delay of the Hague Convention as the principal basis for working around the Convention would leave the

Convention a dead letter." *Alticor Inc. v. Mingzhong Wang*, No. 19-1098, 2020 U.S. Dist. LEXIS 260508, at *4 (W.D. Mich. Feb. 28, 2020).

Additionally, given the language in the Hague Convention that it "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad," Hague Convention, Art. 1, and the Supreme Court's recognition that "[t]his language is mandatory," and that compliance with the Hague Convention is required "in all cases in which it applies," *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988), "several district courts have determined that, where the Hague Convention is applicable, Rule 4(f) requires the parties to first attempt service by the means designated in the Convention." *Temperley*, 2025 U.S. Dist. LEXIS 18486, at *25. So it will not be cast aside so easily.

This is especially true where, as here, Plaintiff has a legitimate address for HK. (ECF No. 7, PageID.62.) "Article 1 of the Convention provides, 'This Convention shall not apply where the address of the person to be served with the document is not known.'" *Chanel, Inc. v. Zhong Zhibing*, No. 09-02835, 2010 U.S. Dist. LEXIS 25709, at *9–10 (W.D. Tenn. Mar. 17, 2010). Thus, courts often allow alternate service on a defendant covered by the Hague Convention whose address is unknown. *See id.* (allowing service by email under Rule 4(f)(3) where "Chanel has attempted to verify Defendant's addresses and has determined that each is fraudulent."); *see also Binzhiyuan (Hong Kong) Paper Prods. v. Changbin Xi*, No. 25-10716, 2025 U.S. Dist. LEXIS 53026, at *3 (E.D. Mich. Mar. 20, 2025) ("Additionally, courts have approved

service by email for similar circumstances, i.e., when the available physical address is invalid, and the defendants conduct their business online."); *BBK Tobacco & Foods, LLP v. Gooshelly*, 613 F. Supp. 3d 1012, 1014–105 (E.D. Mich. 2020) (approving service by email to Chinese company where "BBK has established that through its investigation and discovery, the Defendants' purported physical addresses in China are 'false, incomplete, and invalid for service of process.'")

In short, Plaintiff should first make some attempt to serve HK via the Hague Convention. If there are obstacles, alternate service may be appropriate at that time.

The current record also fails to support the request for alternate service on Euro Alliance. Plaintiff recognizes that the UAE is not a signatory to the Hague Convention or any other international agreement with the United States regarding service of process. (ECF No. 7, PageID.61.) But Plaintiff simply states that [t]raditional service through letters rogatory or diplomatic channels would be unduly time-consuming and costly, often taking more than one year for execution through the UAE Ministry of Justice." (*Id.*) Plaintiff "ha[s] not provided any argument or legal authority demonstrating that their proposed methods of alternate service comply with or minimize offense to UAE law." *Spencer v. Caracal Int'l, LLC*, No. 21-00005, 2021 U.S. Dist. LEXIS 69346, at *8–11 (M.D. Tenn. Apr. 9, 2021); s*ee also Butterfield v. Abou-Shaaban*, No. 05-639, 2005 WL 8176859, at *2 (D. Or. Sept. 8, 2005) (denying Rule 4(f)(3) motion where "[p]laintiff did not provide the court with any information regarding (1) the manner of service prescribed by the laws of the UAE, (2) direction by the UAE in response to a letter rogatory or letter of request as to how to serve its

residents, and (3) whether the manner of proposed service is prohibited by the law of the UAE"); *Orsi v. Sheik Falah Bin Zayed Bin Sultan Al-Nahyan*, No. 11-10451, 2012 WL 4469120, at *3 (D. Mass. Sept. 25, 2012) (denying Rule 4(f)(3) motion where plaintiff "ha[d] not even attempted to effectuate service in ways that would do less violence to UAE law" and "ha[d] not demonstrated any serious effort to use accepted methods of service in the UAE").

As for Euro Alliance, Plaintiff should at least attempt service through letters rogatory or provide additional information to support that service by email or WhatsApp is permissible under UAE law.

**III.**

For these reasons, Plaintiff's motion for alternate service under Rule 4(f)(3) (ECF No. 7) is DENIED WITHOUT PREJUDICE.

SO ORDERED.

Dated: April 10, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE